IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Chem-Nuclear Systems, L.L.C. a Delaware limited liability company, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | C/A No. 3:03-441-CMC |
| v. | ) ) | |
| James Braun, *et al.*, | ) ) | |
| Defendants. | ) ) | |
| Chem-Nuclear Systems, L.L.C. a Delaware limited liability company, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | C/A No. 3:03-442-CMC |
| v. | ) ) | |
| Avantech, Inc., a South Carolina Corporation | ) ) ) | |
| Defendant. | ) ) | |
| Chem-Nuclear Systems, LLC, a Delaware limited liability company, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | C/A No.: 3:03-3915-CMC |
| v. | ) ) | |
| Alfred C. Abernethy, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER
ON
PETITION FOR ATTORNEYS' FEES**

These three related matters are before the court on Defendants' March 31, 2006 petition for attorneys' fees and non-taxable costs in the amounts of $2,759,420.54 and $87,172.49 respectively.[1] The majority of the fees ($2,399,869,14) are for work performed by Nelson Mullins Riley & Scarborough, L.L.P. ("Nelson Mullins") which was involved predominantly but not solely in defense of the claims asserted against Defendants.

A smaller portion of the fees sought ($359,551.40) relate to work performed by Lewis, Babcock & Hawkins, L.L.P. ("Lewis Babcock") which was initially hired on a contingent fee basis to pursue counterclaims. Affidavit of Daryl Hawkins, Esquire at ¶ 11 (referencing only the contingent fee arrangement). According to argument (but without evidentiary support), Defendants assert that, upon dismissal of the counterclaims, Lewis Babcock was asked to remain to assist with the defense on a non-contingent basis.[2] *See* Defendants' Memorandum in Support at n. 16 (asserting that Hawkins was asked to continue on an hourly basis after the court dismissed the counterclaims on summary judgment).

The present petition follows jury and non-jury verdicts fully favorable to Defendants on all claims and the two counterclaim which survived to trial. These include, in the First and Second

---

[1] Defendants filed an identical petition in all three actions: Dkt No. 540 in C.A. No. 3:03-441; Dkt No. 518 in C.A. No. 3:03-442; and Dkt No. 206 in C.A. No. 3:03-3915. For ease of reference, the court refers to the "petition" in the singular. The court also refers to the three actions as the First (3:03-441), Second (3:03-442), and Third (3:03-3915) Actions, their sequence designation being based on the order in which they were filed. This order does not address the supplemental petition(s) filed on May 15, 2006 in these three cases.

[2] The last of the counterclaims was eliminated from these actions on September 19, 2005, when the court denied Defendants' motion to reconsider its decision to grant summary judgment on the counterclaim for bad faith prosecution of a trade secret. Dkt No. 396 (in C.A. No. 3:03-441). A significant portion of the legal fees sought on behalf of Lewis Babcock, however, predate September 19, 2005.

2

Actions, claims for patent infringement, breach of contract, and various other state law causes of action, as well as counterclaims for patent invalidity for obviousness and unenforceability due to inequitable conduct in the procurement of the patent. The Third Action also went to trial on a claim for breach of contract in addition to a related conversion cause of action.

Other claims, as well as a number of the counterclaims, were dismissed in the various actions by consent or pretrial rulings. The dismissed claims included a claim for copyright infringement which was asserted in the Third Action.

For the reasons set forth below, the court finds that Defendants are entitled to recover some, but not all, of the attorneys' fees they seek but declines to award non-taxable costs. The court further finds that the fee award should be allocated, to the extent possible, between the first two actions and the Third Action, and between the patent-related and contract-based claims in the first two actions. The court declines to apportion the fees between the firms involved in the defense of the action.

Having made an effort to allocate the fees based on the materials submitted, the court awards a single sum of **$1,683,246.53** collectively to the three individual Defendants in the First Action whose employment agreements include cost shifting provisions: Defendants James Braun, Cam Abernethy, and Carl Rowland. The court attributes **$717,449.34** of this amount to the patent-related claims and **$965,797.19** to the contract-based claims. The court makes a concurrent award of **$717,449.34** to AvanTECH, Inc., the single Defendant in the Second Action, based on the patent-related claims.[3]

---

[3] The award in the Second Action is duplicative of and, therefore, not in addition to the amounts awarded to the individual Defendants in the First Action based on the patent-related claims.

The court also awards **$234,550.74** in fees to the individual Defendant, Cam Abernethy, in the Third Action. This award is founded on the attorneys' fees provision of his employment contract. In making this award, the court has excluded a small portion which would be attributable solely to the copyright aspects of the Third Action, but only to the extent those aspects of the Third Action do not overlap with the contract-based claims.

### I. AVAILABILITY OF ATTORNEY FEE AWARDS

Under the traditional American rule, each party to a lawsuit is responsible for its own litigation expenses including attorneys' fees. *Alyeska Pipeline Co., v. Wilderness* Soc'y, 421 U.S. 240, 247 (1975). The rule may, however, be modified by contract or statute. In the present case, three of the seven individual Defendants are signatories to employment agreements with fee and cost-shifting provisions, thus providing a contractual basis for an award of fees and costs to these Defendants. The patent and copyright-related claims, likewise, provide statutory bases which may support an award of fees or costs or both. *See* 35 U.S.C. § 285 (governing attorney fee awards in patent cases); 17 U.S.C. § 505 (governing attorney fee awards in copyright cases).

Each of these bases for awarding fees is subject to different rules and standards. These differences are one of the reasons the court concludes that the fees and costs should, to the extent possible, be allocated between the three actions and between those causes of action within the First Action which may support an award of attorneys' fees and costs. The court also finds such allocation is appropriate to avoid the necessity for reconsideration on a cold record following an appeal.

### II. ALLOCATION OF FEES AND COSTS SOUGHT

Although they rest on a variety of different legal and factual grounds, the claims in these three actions are heavily intertwined. It is not, therefore, possible to make a precise allocation of fees and costs between the three actions or between the various causes of action asserted in each of them.

For example, there is such a significant degree of overlap between the multiple breach of contract claims asserted in the First Action, that it is unlikely the time required to defend those claims would have been significantly lower had those claims been asserted against only the three individual Defendants whose employment contracts contained fee-shifting provisions, or even if asserted against any one of them. At the same time, there is at least some incremental cost in having named the additional individuals as Defendants. Similarly, the other (non-contract-based) state law claims asserted in the First and Second Actions are significantly but not entirely intertwined from a factual standpoint with the contract claims in the First Action. Thus, the time required to defend the contract claims in the First Action cannot be wholly distinguished from the time required to defend the other state law claims in the First and Second Actions.

While lesser in extent, there is also an overlap between the time required to defend the patent-based claims and the state law claims asserted in all three actions. For example, the fees relating to the very contentious motions to disqualify Plaintiffs' original counsel are equally attributable to all actions. Similarly, certain pretrial management and discovery-related fees would be difficult, if not impossible, to allocate between the separate actions and claims within those actions.

Costs of discovery, likewise, cannot be easily divided. For example, a given deposition may have related to all claims with only some portions being specific to specific claims and the rest necessary or at least appropriate to every claim. Paper discovery, on the other hand, would be somewhat more divisible given that some would relate more clearly to patent-related claims and some to contract and other state law claims.

This is not to say that no distinctions could or should be made. In their objection to the fee petition, Plaintiffs raise various legitimate concerns relating to Defendants' failure to allocate the fees

5

and non-taxable costs between the various actions and causes of action. They suggest that, in the absence of allocation by Defendants, the court should allocate the fees between the three actions and multiple causes of action within those actions, as well as between the law firms involved. Plaintiffs also assert that the allocated fees and expenses should then be reduced on multiple grounds to a small but unspecified fraction of the amounts requested.

In their reply, Defendants argue that no allocation between Defendants, Actions or claims should be made because the intertwined nature of the actions and causes of action forced all Defendants to defend all claims in order to defend any of the claims against any of the Defendants. Defendants further note that the intertwined nature of the claims and actions resulted from Plaintiffs' strategic choices. They decline to offer the court any basis on which it might allocate the fees should it determine that allocation is, nonetheless, appropriate.

**Allocation of Fees.** Having fully considered the memoranda of both parties and based on its own recollection of the extensive proceedings, the court concludes that some allocation of fees is necessary and appropriate. It further concludes that the attorneys' fees sought[4] can be reasonably allocated between the three actions and categories of claim as follows:

| | | |
|---|---|---|
| Patent-related claims in First and Second Action | – | forty percent (40%) |
| Non-Patent claims in First and Second Action | – | fifty percent (50%) |
| Third Action | – | ten percent (10%) |

---

[4] The "fees sought" figure used here is the amount which Defendants represent as excluding fees attributable to any counterclaims. While it appears that both defense firms excluded various time entries directly attributable to the counterclaims from their fee petition, it is equally clear that the Lewis Babcock firm has included substantial time for periods when it concedes its role was limited to work on the counterclaims and while it was working on a contingent fee basis. The court finds that further reduction of the time allowed is appropriate for both reasons. Were the court not to make these reductions, it would find some if not all of the same time properly excluded for duplication of effort.

For reasons discussed in later sections, the court concludes that the fees attributed to these general categories in each of the actions should be reduced to some degree. *See also supra* n. 3. The court declines to allocate fees between law firms.

**Non-Award of Non-Taxable Costs.** The court declines to either allocate or award costs. This is for two reasons. First, the basis on which non-taxable costs may be awarded differs between the various bases for awarding fees and costs. For example, expert witness fees are not recoverable as costs in a patent action except to the extent allowed under 28 U.S.C. § 1920 (allowing payment for court-appointed experts and general payment of witness fees) and 28 U.S.C. § 1821(b) (setting generally applicable witness fees). *See Amsted Indus. v. Buckeye Steel Castings,* 23 F.3d 374, 376 (Fed. Cir. 1994) (concluding that earlier authority to the contrary had been overruled by *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83 (1991) (superceded by statute as to fees under civil rights statutes)).

Second, the allocation of costs cannot be assumed to follow the investment of time and, therefore, allocation of fees on a similar percentage basis. This is because certain aspects of the case (most particularly the patent-related claims) would likely have generated significantly greater non-taxable costs than other aspects of the case.

The court could, therefore, only award non-taxable costs if it were first to determine which costs related to which claims. The record is not presented in a manner which would allow the court to make this determination. This is, in part, because Defendants have made the strategic choice to seek unallocated costs and fees despite Plaintiffs' challenge to this approach. Under these circumstances, the court declines to award any non-taxable costs.[5]

---

[5] Costs taxable under 28 U.S.C. § 1920 are addressed by separate order.

### III.  APPLICABLE STANDARDS AND APPLICATION

A.  **Challenges to All Bases for Award of Fees and Costs**

Plaintiffs challenge the fee petition on various grounds which are not specific to the bases on which the fee award is pursued (*i.e.,* patent, contract, or copyright). These challenges will be addressed first.

Plaintiffs argue that Defendants cannot recover fees and non-taxable costs because they have unclean hands. The court rejects this argument to the extent it is asserted as an outright bar to recovery of fees and costs. To the extent this argument incorporates challenges to recovery of fees on unsuccessful motions or counterclaims, the court will consider it in reducing the awards with respect to each category of claim discussed below (§III.B.).

Plaintiffs also challenge the petition based on Defendants' failure to allocate the fees and costs between claims and actions and their related inclusion of fees which should be excluded altogether (*e.g.,* fees attributable to work done on the counterclaims or otherwise on a contingent fee basis). These concerns are addressed by the court's allocation of fees as discussed above and percentage reductions as discussed below (§§ III. B-D.) with respect to the three separate categories of claim. The court also addresses these concerns, in part, by its disallowance of non-taxable costs.

Plaintiffs have not challenged the hourly rates charged by counsel or asserted that the hours worked were excessive in relation to the complexity and requirements of the litigation *in general*. Their challenges relate, instead, to whether the work at issue was *necessary to claims for which fees may be shifted*. The court, therefore, addresses only these grounds for challenging the fee awards.

B.  **Patent-Based Claims in First and Second Actions.**

**Standards.** Section 285 of Title 35 authorizes "[t]he court in exceptional cases to award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Even where such exceptional

circumstances are found to exist, "[t]he decision to award attorney fees . . . is discretionary with the trial court judge." *Amsted Indus.,* 23 F.3d at375.

> The district court has discretion to decide how much, if anything, of a reasonable fee to award to the prevailing party in an exceptional case. Thus, even an exceptional case does not require an award of attorney fees. The district court is in the best situation to weigh the factors that contribute to a fair allocation of the burdens of litigation considering the policies of the laws being enforced, the matter in litigation, and the interests of justice.

Herbert F. Schwartz, Patent Law and Practice § 8.V. at 228 (4th ed. 2003).

"There are three requirements for an award of fees under Section 285: (1) the case must be exceptional, (2) the fees must be reasonable, and (3) the fees may be awarded only to the prevailing party." Patent Law and Practice §8.V. at 225. The exceptional nature of the case must be established by clear and convincing evidence. *Machinery Corp of Am. v. Gullfiber AB,* 774 F.2d 467, 470-72 (Fed. Cir. 1985). A finding that the patent was secured through inequitable conduct is one circumstance which may support an award of attorneys' fees in favor of an accused infringer. *Superior Fireplace Co. v. Majestic Prods. Co.,* 270 F.3d 1358, 1377-78 (Fed. Cir. 2001) (stating also that district court should set forth its reasons for finding the case to be exceptional).

Calculation of a reasonable fee allowable under Section 285 begins with calculation of the lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Other factors may then be applied to adjust the fee upward or downward. *Id.* at 434. These factors include:

> the results obtained; the attorney's normal billing rate; difficulty and novelty of the case; time and labor involved; loss of other business; fees customarily charged for similar services; whether it is a fixed or contingent fee; reputation, experience, and ability of counsel; fees paid to opposing counsel; and expenses and advancements.

Patent Law and Practice §8.V. at 228 (citing *Hensley*, 461 U.S. at 434).

When a fee applicant has pursued both successful and unsuccessful claims, "the most critical factor . . . is the degree of success obtained" because when "a [party] has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole may be an excessive amount." *Brodziak v. Runyon,* 145 F.3d 194, 196-97 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In determining whether to reduce the compensable hours, the court must first determine "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id.*

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. *Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved*. . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and *therefore no fee may be awarded for services on the unsuccessful claim*.

*Hensley,* 461 U.S. at 434-35 (emphasis added, internal quotations omitted). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that *is distinct in all respects* from his successful claims, the hours spent on the unsuccessful claim should be excluded." *Id.* (emphasis added).

**Standards Applied**. In the present case, Plaintiffs initially asserted claims for infringement of two distinct patents. The claims relating to one of the patents were withdrawn early in the action. The claims relating to the remaining patent proceeded to a *Markman* hearing. The rulings at that hearing generally adopted the position advanced by Plaintiffs. Thus, Defendants were largely unsuccessful at that stage in the proceedings.

Despite Plaintiffs' success at the *Markman* hearing, the court concluded prior to trial that Plaintiffs had failed to present adequate evidence from which a jury could find infringement. *See* Dkt No. 300 in 3:03-441. After a non-jury phase of the trial, the court further concluded that the patent was invalid for obviousness and unenforceable due to inequitable conduct in the procurement of the patent. *See* Dkt No. 564 in 3:03-441 (Second Amended Findings and Order).

Based on the above history of the litigation, most particularly on the finding of inequitable conduct, the court finds by clear and convincing evidence that this is an exceptional case warranting an award of attorneys' fees attributable to the patent claims. The court, however, exercises its discretion to award less than the full amount of fees allocated by the court to the patent claims. This decision is based on several factors including those specifically addressed by Plaintiffs in their opposition to the fee petition. First, the court concludes the amount should be reduced because some of the fees attributable to the patent claims relate to the voluntarily dismissed patent claims as to which no exceptional circumstances exist to warrant an award of fees. The court also finds that Defendants' lack of success at the *Markman* hearing warrants a reduction for work relating to that stage of the proceedings, given that this work would have contributed little, if anything, to Defendants' ultimate success in the action.

The court has also considered the remaining factors discussed in *Hensley* as well as the arguments raised in Plaintiffs' memorandum. As to the latter, the court finds that the following justify some reduction in the fee award: (1) some time entries by the Nelson Mullins law firm suggest non-compensible matters (*e.g.*, coordinating regarding other litigation or providing general business advice); and (2) numerous time entries by the Lewis Babcock law firm predate dismissal of the counterclaims and were, therefore, subject to a contingent fee agreement.

Based on all of the above considerations, the court concludes that the total fees attributed to the patent claims ($1,103,768.22) should be reduced by thirty-five percent (35%). The court, therefore, awards **$717,449.34** in fees attributable to the patent claims. This award is made jointly in the First and Second Action. The court declines to award non-taxable costs in addition to the above fees for reasons set forth above.

### C.     Non-Patent-Based Claims in First Action.

**Standards.** Another exception to the American rule applies when a contractual provision grants a right to attorneys' fees. Such an exception applies to the contract-based claims asserted against three of the Defendants in the First Action. This is because each of these Defendants was a signatory to a contract which included a fee and cost shifting provision. The relevant provision read as follows: "The parties agree the prevailing party shall be entitled to recover the reasonable attorneys' fees and court costs incurred by such party in the course of prosecuting or defending any lawsuit brought under the terms of this Agreement." Petition at Exhibits G, H, & I.

Because these contracts were executed in different states (South Carolina, Connecticut, and Ohio), they are subject to interpretation under different states' laws.[6] Nonetheless, to the extent standards are provided, they do not appear to differ materially from those applicable in South Carolina where courts consider "six factors: the nature, extent, and difficulty of the legal services

---

[6] Defendants do not address the issue of governing law in either of their memoranda, but do rely on South Carolina standards. Plaintiffs argue persuasively and without contradiction that each of the contracts is interpreted under the law of a different state (Ohio, Connecticut and South Carolina). Plaintiffs concede, however, that Connecticut applies a similar analysis to that applied in South Carolina. While Plaintiffs assert that Ohio allows fee-shifting by contract only in limited situations, the present situation appears to be one in which fee-shifting would be allowed. No party provides the court with Ohio-specific standards for awarding fees once it is determined that a contractual provision allowing for fee-shifting is permissible. In the absence of such guidance, the court finds the South Carolina standards persuasive.

rendered, the time and labor necessarily devoted to the case, the professional standing of counsel, the contingency of compensation, the fee customarily charged in the locality for similar legal services and the beneficial results obtained." *Carolina Chem. Equip. Co. v. Muckenfuss,* 471 S.E.2d 721 (S.C. App. 1996).

**Standards Applied.** There are three related questions which must be addressed as a threshold to awarding any fee based on the contractual provisions quoted above. First, the court must determine whether AVANTech's commitment to pay fees on behalf of the individual Defendants bars them from recovering fees. Second, the court must determine how to allocate fees among the seven individual Defendants, only three of whom had fee-shifting provisions in their employment contracts. Third, the court must determine the extent to which the contract-based claims are intertwined with the non-contract, non-patent based claims such that the overall fees attributable to the non-patent claims may be recovered based on the contractual fee-shifting provisions.

First, and most critically, the court finds that the source of actual payment is not determinative. *See generally,* Defendants' Reply at 9 and cases cited therein. AVANTech's payment of attorneys' fees (or commitment to make payment) on behalf of the individual Defendants does not, therefore, bar recovery under the fee-shifting provisions of the individual Defendants' employment contracts.

As to the second and third questions, the court concludes that the non-patent claims in the First and Second Actions were asserted and pursued by Plaintiffs in such a manner that the claims are heavily, if not inextricably, intertwined both as between the various Defendants and the multiple legal theories.[7] More specifically, the court finds that the time required to defend the contract-based

---

[7] The court, likewise, concludes that the assertion of the non-contract based, non-patent claims against AVANTech in the Second Action did not add more than a *de minimus* amount to the defense costs.

claims would have varied little, even if only one of the individual Defendants had been named. The court, likewise, finds a substantial, though not total, overlap between the factual allegations supporting the different theories of recovery. The court, therefore, concludes that while some reduction is appropriate on these bases, that reduction would not be proportionate to the number of Defendants with and without fee-shifting provisions in their employment contracts or the number of contract and non-contract based claims. For the same reason, the pretrial grant of summary judgment as to the contract-based claims asserted against two of the individual Defendants whose employment contracts contained fee-shifting provisions and pre-deliberation grant of judgment as a matter of law as to the third supports only a small reduction in any fee award.

In light of the above considerations, as well as additional grounds for reduction of the fee award relied on in the preceding section, the court concludes that the total fees attributed to the non-patent claims ($1,379,710.27) in the First Action should be reduced by thirty percent (30%). The court, therefore, awards **$965,797.19** in fees attributable to the non-patent claims. This award is made solely in the First Action. The court declines to award non-taxable costs in addition to the above fees for reasons set forth above.

    **D.**    **Claims Asserted in the Third Action.**

**Standards.** There are two potential bases for an award of fees in the Third Action. First, the fees might be awarded under the fee-shifting provisions of Defendant Abernethy's employment agreement. Such an award would be subject to the same standards as addressed in the preceding section. Second, to the extent the claims at issue arose under the copyright law, fees may be available under 17 U.S.C. § 505 which reads as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.

> Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Fourth Circuit has identified four factors trial courts must consider when determining fee awards under this section: (1) "the motivation of the parties"; (2) "the objective reasonableness of the legal and factual positions advanced"; (3) "considerations of compensation and deterrence"; and (4) "any other relevant factors presented.*"* *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 234 (4th Cir. 1993).

In deciding whether to award fees under this section, and the amount of those fees, the court would also apply the twelve factor test set forth in *Trimper v. City of Norfolk Va.,* 58 F.3d 68 (4th Cir. 1995), which provides the Fourth Circuit standard for reviewing motions for attorneys' fees:

> (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.

*Trimper,* 58 F.3d at 73.

**Standards Applied.** There are a number of difficulties and complexities relating to the copyright claim which suggest that the failure of this claim should not be attributed entirely to Plaintiffs. The particular basis on which the claim was dismissed, for instance, related to a failure to provide the code as it existed at the relevant time. Plaintiffs were unable to satisfy this requirement because the code, which was at all times in the control of one or more Defendants, was not available to Plaintiffs.

This is not to suggest a likely verdict in Plaintiffs' favor had the copyright been properly registered and this claim been allowed to proceed to trial. While the outcome is not beyond doubt,

the jury's verdict on the closely related contract claim suggests they would also have found in Defendant's favor on a copyright-based claim. Nonetheless, the court finds that the *Rosciszewski* factors do not support an award of fees in the Third Action based solely on Defendants' success on the copyright claim and in light of all the circumstances.

On the other hand, the court finds that the fee-shifting provision of Defendant Abernethy's employment contract does provide a basis for recovery of fees to the extent the fees derive from the defense of the contract claim or other interwoven claims. The court further finds that the various claims asserted in the Third Action rested on a single factual foundation and interdependent legal theories and are, therefore, heavily interwoven.

For reasons addressed above as to other claims, and providing some reduction to account for the differing legal theories (to the extent they can be distinguished from the contract theory), the court concludes that the total fees attributed to the Third Action ($275,942.05) should be reduced by fifteen percent (15%). The court, therefore, awards **$234,550.74** in fees attributable to the Third Action. The court declines to award non-taxable costs in addition to the above fees for reasons addressed in preceding sections

### E.    Non-Enhancement.

Defendants argue that the award should be enhanced for a variety of reasons including the disparate wealth of the parties, the economic impact of the litigation on the corporate Defendant, the delay in receipt of payment, and the economic, emotional, and consequential physical impact of the litigation on the individual Defendants. The court finds no basis in any of these arguments for enhancement of the award of fees as set forth above under the circumstances of these actions. It has, however, considered the delay in payment factor in determining the percentages to award. For this reason, further enhancement is not appropriate based on the delay in receipt.

**CONCLUSION**

For the reasons stated above, this court finds: (1) that Defendants in the First and Second Actions are entitled to a collective award of fees attributable to the patent-related claims in the amount of **$717,449.34**; (2) that the three Defendants in the First Action whose employment agreements included fee-shifting provisions are entitled to an additional collective award of fees attributable to the contract-related claims in the amount of **$965,797.19**; and (3) that the individual Defendant in the Third Action is entitled to a fee award in the amount of **$234,550.74**.  The total of all fee awards is, therefore, $1,917,797.27.  The court has declined to award any non-taxable costs.

IT IS SO ORDERED.

    s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 23, 2006

C:\temp\notesB0AA3C\~8761171.wpd